RENDERED:  AUGUST 14, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0848-ME

J.J.                                                                                    APPELLANT

v.

APPEAL FROM CAMPBELL FAMILY COURT
HONORABLE ABIGAIL E. VOELKER, JUDGE
ACTION NO. 23-AD-00046

A.W.; N.W.; B.G.; AND L.J.W.,
A MINOR CHILD                                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  KAREM, McNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Biological mother, J.J., appeals the June 4, 2025, Findings of

Fact and Conclusions of Law, and Judgment of Adoption of the Campbell Family

Court (family court), which granted the petition of A.W. and N.W. for adoption of

L.J.W., without the consent of the biological parents, that terminated J.J.'s parental

rights.[1] On appeal, J.J. argues that petitioners did not show by clear and convincing evidence that the conditions outlined in Kentucky Revised Statutes (KRS) 199.502 existed in order to permit an adoption without consent of the biological parents. Finding no error, we affirm.

BACKGROUND

L.J.W. was born in January 2023. In the fall of 2022, J.J. initiated contact with an adoption agency. The agency connected J.J. with a married couple, A.W. and N.W. For several months prior to the birth, A.W. and N.W. accompanied J.J. to doctor appointments. When born, L.J.W. was a month premature, underweight for his gestational age, drug dependent and experiencing withdrawal, and suffering from numerous additional medical issues.[2] The biological parents had ended their relationship prior to L.J.W.'s birth.

At the hospital, J.J. signed releases and a consent to grant custody of L.J.W. to A.W. and N.W. J.J. was discharged from the hospital two days before L.J.W. and signed a power of attorney under KRS 403.352 which enabled A.W.

---

[1] Biological father, B.G., is a party to this appeal per Kentucky Rules of Appellate Procedure 2(A)(2). He was a party in both the dependency, neglect or abuse (DNA) action and the adoption below but was not named in J.J.'s notice of appeal, nor has he participated in this appeal.

[2] A twin sister was also born on the same date and shortly thereafter passed away.

and N.W. to make medical decisions for the child. When L.J.W. was discharged on January 30, 2023, A.W. and N.W. took custody of the child.

Shortly after taking the child home, A.W. and N.W. received text messages from J.J. indicating she wanted to back out of the adoption process. On February 3, 2023, A.W. and N.W. brought a dependency, neglect or abuse (DNA) action in Campbell Family Court (Action No. 23-J-0033-001) against J.J., alleging the child was in imminent danger if they were not granted legal custody. (The biological father, B.G., was added to the action once his paternity was established.[3]) A.W. and N.W. contended in the DNA action that they were "fictive kin" to the child pursuant to KRS 199.011(10). A guardian *ad litem* (GAL) was appointed to represent the child. On February 3, 2023, the family court granted emergency custody to A.W. and N.W. on the basis that the child was in immediate danger due to the failure or refusal of the parents to provide for the safety or needs of the child. Record at 12. The court made the following additional specific findings: "Child was born substance affected, premature, and suffering w/d. Child has significant health concerns. Positive for THC and amphetamines." Record at 12.

---

[3] A positive test result establishing paternity was filed in the DNA action on February 15, 2023. Record at 23.

The Cabinet for Health and Family Services (the Cabinet) was made a party to the DNA action and filed a dispositional report on April 19, 2023. The biological parents were ordered to undergo drug screening, and the court required three clear drug screens before visitation with L.J.W. could take place. The paternal grandmother was allowed to intervene in the case and was granted visitation. However, after hearing evidence pursuant to paternal grandmother's motion for custody, the court determined on July 14, 2023, that temporary custody should remain with A.W. and N.W.[4] Paternal grandmother appealed this decision, which was affirmed by Opinion of this Court (*J.P. v. Cabinet for Health and Family Servs.*, No. 2023-CA-1160-ME, 2024 WL 306479) (Ky. App. Jun. 21, 2024) (unpublished)).

On August 8, 2023, A.W. and N.W. filed this action (and an amended petition on August 28, 2023) for adoption of L.J.W. without consent of biological parents, naming L.J.W., J.J., and B.G. as respondents and notifying the Cabinet. The GAL who had served in the DNA action was again appointed to act as same for the child in the adoption. The court appointed a warning order attorney to notify J.J. of the pendency of the action, and shortly thereafter appointed that same

---

[4] Campbell Family Court Action No. 23-J-00033-001 remained open and the court continued to allow visitation by paternal grandmother and supervised visitation by biological father when he was compliant with drug screening requirements. A hearing for permanent custody was set for January 2025, but then continued and ultimately never held.

attorney to act as GAL for J.J.  The court also appointed a GAL for B.G.  The Cabinet filed a confidential report recommending the adoption on September 26, 2023.

The family court conducted a final evidentiary hearing on May 16, 2025.  Present at the hearing were A.W. and N.W. and their counsel, the child's GAL, J.J., and the GAL for J.J.  Also present was the GAL for B.G.  B.G. received notice of the hearing but did not attend.  Prior to the admission of testimony, the parties stipulated to multiple documents, including the records from the DNA action, and case records from the Cabinet.  (Video Record (V.R.) May 16, 2025, Hearing – 9:25).  The court then heard testimony from maternal grandfather, Katelyn Comer, a social worker from the Cabinet, J.J., A.W., and N.W.

As concerns J.J., Comer testified that the baby tested positive for several illegal substances at birth, and that J.J. had screened positive for substances during the DNA action.  Comer stated that J.J. had only seen the baby on two occasions after his birth.  Comer testified that J.J. had not been cooperative, had not completed programs required in the Cabinet's case plan for her to gain custody, and had not been active or in contact with the Cabinet.  Comer also testified that J.J. had not provided for L.J.W. financially, physically, or medically.  She reported that J.J. had not addressed the concerns that the Cabinet had raised in order to

establish that she could properly parent L.J.W. Finally, Comer testified that she believed L.J.W. was at long-term risk of harm if J.J. obtained custody.

J.J. testified that she was not using any substances at the time of the hearing and was being tested routinely due to a probation violation in Ohio. She stated that she had completed a month-long residential rehabilitation program in Ohio. She testified that she had "lost" herself for a full year following the birth of L.J.W. due to the death of her mother. She admitted that she left the hospital before L.J.W., and did not return. She said she signed some, but not all of the adoption papers at the hospital and had been represented in those matters by an attorney. She testified that she "gave up" after two visits with the baby because she felt the biological father was also giving up. J.J. also admitted not having reached out to the Cabinet. She asserted that she could provide for the child. She also testified that she had a new apartment that she was living in and was currently employed. (V.R. May 16, 2025, Hearing – 10:53-11:25).

On June 4, 2025, the family court entered Findings of Fact and Conclusions of Law, and a Judgment of Adoption wherein the court found that the conditions necessary for adoption pursuant to KRS 199.502 were met by clear and convincing evidence, the facts stated in the petition were established, all legal requirements including jurisdiction had been complied with, and the best interest of the child would be promoted by the adoption of the child and the child was

suitable for adoption. As a matter of law, J.J.'s and the biological father's parental rights were terminated. *See* KRS 199.502; *M.S.S. v. J.E.B.*, 638 S.W.3d 354, 361 (Ky. 2022). This appeal followed.

## STANDARD OF REVIEW

An adoption without the consent of a living parent pursuant to KRS 199.502 is effectively a proceeding to terminate parental rights. *M.S.S.*, 638 S.W.3d at 359; *see* KRS 199.520(2). In cases of adoption without parental consent, our standard of review is the same as in termination cases, as followed:

> The standard of review in a termination of parental rights action is confined to the clearly erroneous standard in CR 52.01 based upon clear and convincing evidence. The findings of the trial court will not be disturbed unless there exists no substantial evidence in the record to support its findings. Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people. *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114, 116-17 (Ky. App. 1998). Additionally, since adoption is a statutory right which severs forever the parental relationship, Kentucky courts have required strict compliance with the procedures provided in order to protect the rights of the natural parents. *See Day v. Day*, 937 S.W.2d 717 (Ky. 1997).

*B.L. v. J.S.*, 434 S.W.3d 61, 65 (Ky. App. 2014). Our review proceeds accordingly.

ANALYSIS

We begin by noting that appellant's brief is deficient in failing to include a statement of preservation of the issues pursuant to Kentucky Rules of Appellate Procedure (RAP) 32(A)(4). In such circumstances this Court could strike the brief and/or dismiss the appeal. RAP 10(B); RAP 31(H); *see also Commonwealth v. Roth*, 567 S.W.3d 591, 594-96 (Ky. 2019). Additionally, J.J.'s substantive arguments on appeal are not fully developed, consisting of only two pages in her brief. However, given this is a review of an adoption that terminates parental rights, we have elected to review the case on the merits based upon the entire record presented on appeal.

Under KRS 199.502(1), "an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as part of the adoption proceeding that any of the [nine] following conditions exist with respect to the child[.]" KRS 199.502(1); *R.P., Jr. v. T.A.C.*, 469 S.W.3d 425, 427 (Ky. App. 2015). In this case, the family court based its decision on subsections (a), (b), (e) and (g) of the statute. Record at 222, 304-05. Those provisions read as follows:

> (a) That the parent has abandoned the child for a period of not less than ninety (90) days;
>
> (b) That the parent had inflicted or allowed to be inflicted upon the child, by other than accidental means, serious physical injury;

. . . .

> (e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;

. . . .

> (g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child[.]

KRS 199.502(1)(a)(b)(e) and (g). "'[D]ue regard shall be given to the opportunity of the [family] court to judge the credibility of the witnesses' because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the [family] court." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (quoting Kentucky Rules of Civil Procedure (CR) 52.01).

J.J. argues on appeal that the judgment of adoption was not supported by clear and convincing evidence. J.J. further argues that the family court erred by ignoring the improvements she had made in her life, including her present sobriety. For this argument, J.J. mainly cites to her own testimony and does not refute other evidence relied on by the family court. In fact, J.J. concedes on appeal that she

testified at the final hearing that she had given up during the pendency of the DNA case. Furthermore, while her recent efforts to achieve sobriety are a step in the right direction, it must be noted she did not substantiate her claims to sobriety by consistently submitting to court-ordered drug tests or providing documentary evidence of her rehabilitation stay in Ohio.

J.J.'s arguments ignore the overwhelming evidence in the case and the thoroughness of the family court's analysis. The family court found four bases under the statute to support a finding of termination of parental rights when KRS 199.502(1) only requires one. J.J. does not contest the Court's findings of abandonment pursuant to KRS 199.502(1)(a) or the infliction of serious physical injury upon L.J.W. by her consuming multiple illicit substances while pregnant pursuant to KRS 199.502(1)(b). The evidence established that J.J. had not seen the child since February of 2023. Additionally, not only had she not worked the Cabinet's case plan toward reunification in the ensuing months after the child's birth, she also failed to stay in contact with the Cabinet. (V.R. May 16, 2025, Hearing – 10:15, 10:29, 10:41, 11:00).

The family court also found J.J. had continuously or repeatedly failed to provide or was substantially incapable of providing essential parental care and protection, with no reasonable expectation of improvement in parental care and protection considering the age of the child. KRS 199.502(1)(e). J.J. never

-10-

parented L.J.W. after birth. The evidence further showed that she had no relationship with the child from birth up to the date of the hearing, when he was more than two years of age. (V.R. May 16, 2025, Hearing – 10:05, 10:39, 11:10, 11:19). These findings by the family court were supported by clear and convincing evidence.

Finally, the family court found J.J. continuously and repeatedly failed to provide essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being with no reasonable expectation of significant improvement in the immediately foreseeable future. KRS 199.502(1)(g). This finding is clearly and convincingly supported in the record as J.J. denied having any knowledge of the child's medical needs and she admitted that she had never provided any essentials for L.J.W. during his lifetime. This, coupled with J.J.'s history of substance abuse and past criminal behavior, cast significant doubt on whether she could ever put the child's needs first in the future.

In sum, J.J. has failed to demonstrate any error in the findings of fact and conclusions of law made by family court as she made little or no effort to be a parent for L.J.W. during the first two years of his life. Her interest in retaining her

parental rights, as observed by the family court, appeared to be motivated by the biological father's family's interest in having custody of the child.[5]

For the foregoing reasons, we affirm the judgment of adoption entered by the Campbell Family Court terminating J.J.'s parental rights pursuant to KRS 199.520(2), based upon clear and convincing evidence and the best interest of the child.

ALL CONCUR.

BRIEF FOR APPELLANT:

Donna M. Bloemer
Covington, Kentucky

BRIEF FOR APPELLEES:

Rene B. Heinrich
Newport, Kentucky

G. Keith Gambrel
Newport, Kentucky

---

[5] The family court found, "The Court is concerned [J.J.] is here at the request of [B.G.]. While she stated otherwise, her testimony frequently addressed [B.G.] and his family even when not asked." Record at 296.